Sealed
Public and unofficial staff access to this instrument are prohibited by court order

United States Courts
Southern District of Texas
FILED
*August 09, 2023*
Nathan Ochsner, Clerk of Court

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** § § | |
| v. § § | **Criminal No.: 4:23-cr-00347** |
| **MYRON LAMPKIN;** § | **UNDER SEAL** |
| **Defendant.** § | |

## INDICTMENT

THE GRAND JURY CHARGES THAT:

## INTRODUCTION

At all times material to this indictment:

1. Stewart Title Guaranty Company (STG) is a Texas Corporation located at 1360 Post Oak Blvd., Ste 100, Houston, TX 77056. Stewart Title's business includes title and escrow services to facilitate real property transactions. Pursuant to its escrow services, STG receives money deposited into an escrow account by real estate purchasers and/or lenders. While the money is in this escrow account, STG has authority to disburse that money to the real estate sellers and/or other third parties in accordance with the agreement between the purchasers and sellers of the real estate transaction. Among STG's clients are customers involved in real estate transactions as a regular part of their business (such as lease modifications and extensions). STG has agreements with these types of customers to perform numerous services on numerous accounts, then invoice the customer in bulk.

2. JPMorgan Chase Bank ("Chase") is an American national bank headquartered in New York, New York with numerous branches in all 50 states including in the Southern District of Texas. Chase is a federally insured financial institution as defined by the Federal Deposit Insurance Act.

3. BBVA USA (BBVA) was an American national bank headquartered in Birmingham Alabama with numerous branches in all 50 states including in the Southern District of Texas. BBVA USA was a federally insured financial institution as defined by the Federal Deposit Insurance Act.

4. Capital One Financial Corporation (Capital One) is an American national bank headquartered in McLean, Virginia with numerous branches in all 50 states including in and around the Southern District of Texas. Capital One is a federally insured financial institution in in that they were an insured depository institutions of the Federal Deposit Insurance Act.

5. Automated Teller Machines ("ATM") are electronic telecommunication devices that enable customers of financial institutions to perform financial transactions, such as cash withdrawals, deposits, funds transfers, balance inquiries, or account information inquiries at any time and without the need for direct interaction with bank staff. ATMs are commonly equipped with keypads, touch screens, and similar devices to allow the customers to interface with the machine. Chase has a nationwide network of ATMs located commonly at Chase bank branches as well as in other non-bank branch locations.

6. Chase operates and maintains a data processing center that is used to facilitate the electronic communications to and from the nationwide network of Chase ATMs that is at a location outside of the State of Texas.

7. When a Chase bank customer utilizes an ATM, the customer must insert an ATM card that is issued to the customer by Chase. When prompted by the ATM, the customer must then type his or her Personal Identification Number (PIN) into the keypad or touchscreen interface. If the PIN matches the inserted ATM card, an electronic signal is automatically generated by the ATM and is transmitted to Chase's data processing center. The data processing center then

automatically sends a return signal to the ATM directing the ATM to prompt the user to key in which service the user wishes to perform (deposits, withdrawals, balance inquiries, etc.).

8. When a Chase Bank customer conducts a check deposit using an ATM, the customer is prompted by the ATM to enter the value of the check via the keypad or touchscreen. Once that is completed, the customer then inserts the endorsed paper check into the ATM which is then electronically scanned by the machine. At that point, the ATM automatically sends a signal to the Chase data processing center relaying the data from the transaction. The data processing center then automatically sends a return signal back to the ATM acknowledging the transmission.

## THE SCHEME

9. Defendant **MYRON LAMPKIN ("LAMPKIN")** was a Closing Specialist at STG. Some of **LAMPKIN'S** duties included reconciling commercial escrow accounts for bulk customers. To perform this, **LAMPKIN** was given authority by STG to access escrow account balances and activity, transfer funds between separate escrow accounts owned by the same bulk customer, and to initiate the issuance of checks drawing on the escrow accounts. These checks were issued from STG's bank accounts located at BBVA USA and were signed by STG personnel with authority to sign STG checks.

10. In 2012, **LAMPKIN** filed incorporation paperwork with the Texas Secretary of State to form the company "Specialized Property Search." In 2016, **LAMPKIN** filed incorporation paperwork the Texas Secretary of State to form the company "SPSC Enterprise, LLC."

11. Beginning in 2012 and continuing through the end of 2019, **LAMPKIN**, used the authority granted to him by STG to initiate the issuance of numerous checks made out to either "Specialized Property Search" or "SPSC Enterprise, LLC" to be drawn from STG customer escrow accounts under his control. He requested these checks pursuant to his role as a Closing Specialist

and, after issuance, the checks were then hand-delivered to him by STG personnel. During an audit conducted by STG in 2019, STG was unable to locate any invoices, work orders, or other justification whatsoever for these checks. Additionally in that audit, STG learned that in some instances **LAMPKIN** would conceal the issuance of these checks by transferring funds from other escrow accounts under his control. In this method, the checks he ordered would not be present on any balance sheets at closing and STG customers were unaware that these checks were being issued from their escrow accounts. In other instances, **LAMPKIN** drew from escrow accounts that had been lying dormant for years while extensive property negotiations between the buyers and sellers worked out. In this method, the customers were not monitoring the escrow accounts and would not learn of any unauthorized checks issued on the account until the transaction moved towards closing.

12. From 2012 through 2019, the checks made out to "Specialized Property Search" or "SPSC Enterprise, LLC" by STG were deposited into the following accounts:

| Bank | Account Number | Name on Account |
|---|---|---|
| Capital One | x8288 | Specialized Property Search |
| Capital One | x2621 | SPSC Enterprise, LLC |
| Chase | x7695 | Myron Lampkin d/b/a Specialized Property Search |

On each of these accounts, Myron **LAMPKIN** opened the account and is the only signatory.

13. From 2012 through 2019, the total number of checks and the total amounts of the checks that were issued by STG to either "Specialized Property Search" or "SPSC Enterprise, LLC" are as follows:

4

| Year | Total Number of Checks | Total value of checks |
|---|---|---|
| 2012 | 68 | $148,788.46 |
| 2013 | 58 | $225,132.67 |
| 2014 | 71 | $279,665.27 |
| 2015 | 115 | $409,160.10 |
| 2016 | 130 | $439,783.29 |
| 2017 | 107 | $516,592.40 |
| 2018 | 125 | $541,543.41 |
| 2019 | 104 | $478,429.03 |
| Total: | 778 | 3,039,094.63 |

14. Analyses of the three bank accounts where all the checks were deposited indicate that the checks were deposited by **LAMPKIN** via an in-person teller or ATM deposits. The majority of the funds ($1.8 million) over the seven years were withdrawn through cash withdrawals made in-person at bank branches, through ATM withdrawals, or personal checks made out to Myron **LAMPKIN**. Other expenses made from **LAMPKIN's** accounts include payments made for car purchases, payments made to the private school where **LAMPKIN's** children attended, credit card payments, and over living expenses. Outside of a few administrative fees such as a Texas Secretary of State filing fee and fees for tax filings, there appear to be no charges or payments for any type of title search company made from any of **LAMPKIN's** accounts.

<u>**COUNTS ONE THROUGH FIVE**</u>
**Wire Fraud**
**(18 U.S.C. § 1343)**

15. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 14 of this Indictment as if fully set forth therein.

16. From on or about January 1, 2012 and continuing until on or about December 31, 2019, in the Houston Division of the Southern District of Texas and elsewhere within the jurisdiction of the Court,

**MYRON LAMPKIN**

for the purpose of executing the above-described scheme to defraud and to obtain money by materially false and fraudulent pretenses, representations, and promises, and attempting to do so, did knowingly cause to be transmitted by means of wire communication in and affecting interstate commerce the following writings, signals, and sounds:

| Count | Date of ATM Deposit | Check Number | Amount | Location of ATM Deposit | Bank Account of Deposit |
|---|---|---|---|---|---|
| **1** | 1/30/2018 | 3316931 | $7,560.00 | 5177 Richmond Ave., Houston, TX | Chase x7695 |
| **2** | 12/17/2018 | 3317053 | $6,550.00 | 5177 Richmond Ave., Houston, TX | Chase x7695 |
| **3** | 02/14/2019 | 3317470 | $9,857.00 | 5177 Richmond Ave., Houston, TX | Chase x7695 |
| **4** | 08/19/2019 | 3332602 | $7,565.25 | 5020 San Felipe St., Houston, TX | Chase x7695 |
| **5** | 09/23/2019 | 3332943 | $8,268.73 | 5020 San Felipe St., Houston, TX | Chase x7695 |

All in violation of Title 18, United States Code, Section 1343.

## NOTICE OF FORFEITURE
### 18 U.S.C. § 981(a)(2)(A)

The allegations contained in Counts One through Five of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(2)(A).

Upon conviction of the offenses in violation of Title 18, United States Code, Section 1343, as set forth in Counts One through Five of this Indictment, the defendant,

**MYRON LAMPKIN**

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violations.

**MONEY JUDGMENT**

In the event of conviction, the United States may seek a money judgement.

**SUBSTITUTE ASSETS**

If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;
b. has been transferred or sold to, or deposited with, a third party;
c. has been placed beyond the jurisdiction of the court;
d. has been substantially diminished in value; or
e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(a)(2)(A).

A True Bill

*Original Signature on File*
Foreperson of the Grand Jury

ALAMDAR S. HAMDANI
United States Attorney
Southern District of Texas

By: _____
John Wakefield
Assistant United States Attorney